UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

EDWARD DEAN WERBIL,

               Petitioner,

v.

BARBRA STOREY,

               Respondent.

_____/

Case No. 2:23-cv-219

Honorable Paul L. Maloney

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Edward Dean Werbil is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. In Kent County Circuit Court Case No. 17-09943-FH, Petitioner pleaded guilty to one count of possession of child sexually abusive material, in violation of Mich. Comp. Laws § 750.145c(4)(a); two counts of using a computer to commit a crime, in violation of Mich. Comp. Laws § 752.797; and one count of production of child sexually abusive material, in violation of Mich. Comp. Laws § 750.145c(2). (Am. Pet., ECF No. 12, PageID.65.) On February 15, 2018, the trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 10 to 15 years' incarceration for the possession of child sexually abusive material conviction and 20 to 40 years' incarceration for the use of a computer and production of child sexually abusive material convictions. (*Id.*)

On November 9, 2023, Petitioner initiated federal habeas proceedings by filing a handwritten petition and brief in support thereof. (ECF Nos. 1 and 2.) In an order (ECF No. 9)

entered on November 28, 2023, the Court directed Petitioner to file an amended petition on the form provided by the Court. The Court received Petitioner's amended petition (ECF No. 12) on January 3, 2024. In his amended petition, Petitioner raises four grounds for relief, as follows:

I.      Petitioner is entitled to resentencing, the sentencing guidelines were mis-scored, violation of state/federal due process rights—ineffective assistance.

II.     Petitioner's due process rights were violated where sentence is disproportionate, unreasonable, and disparate.

III.    Petitioner's [Sixth] Amendment due process [] rights were violated by trial [counsel's] conflict of interest.

IV.     Trial court failed to establish subject matter jurisdiction, violating the [Fourteenth] Amendment.

(Am. Pet., ECF No. 12, PageID.69–74.) Respondent contends that Petitioner's grounds for relief lack merit.[1] (ECF No. 16.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

---

[1] Respondent also contends that habeas grounds II, III, and IV are unexhausted and procedurally defaulted. (ECF No. 16, PageID.147–149.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix, 520 U.S. at 525; Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

**Discussion**

I.  **Factual Allegations**

As noted *supra*, on January 16, 2018, Petitioner pleaded guilty in the Kent County Circuit Court to one count of possession of child sexually abusive material, in violation of Mich. Comp. Laws § 750.145c(4)(a); two counts of using a computer to commit a crime, in violation of Mich. Comp. Laws § 752.797; and one count of production of child sexually abusive material, in violation of Mich. Comp. Laws § 750.145c(2). (ECF No. 17-2.) Petitioner appeared before the trial court for sentencing on February 15, 2018. (ECF No. 17-3.) Petitioner subsequently filed a motion for resentencing, which the trial court denied following a hearing held on October 26, 2018. (ECF No. 17-4.)

Petitioner, through counsel, subsequently filed a delayed application for leave to appeal, raising the following two issues: (1) Petitioner was entitled to resentencing "where the sentencing guidelines were misscored in violation of the state and federal due process right to sentencing based upon accurate information and trial defense counsel was ineffective for failing to challenge the scoring"; and (2) Petitioner's sentence was "disproportionate, unreasonable[,] and disparate." (ECF No. 17-12, PageID.281.) On February 11, 2019, the Michigan Supreme Court denied the application for leave to appeal "for lack of merit in the grounds presented." (*Id.*, PageID.273.) The Michigan Supreme Court denied Petitioner's application for leave to appeal on September 18, 2019. *See People v. Werbil*, 932 N.W.2d 783 (Mich. 2019).

Petitioner returned to the trial court and filed a *pro per* motion for relief from judgment pursuant to Michigan Court Rule 6.500 on November 18, 2019. (ECF No. 17-5.) In his Rule 6.500 motion, Petitioner raised the following three claims: (1) his sentence was procedurally and substantially unreasonable and disproportionate; (2) there was insufficient evidence to convict him; and (3) counsel was ineffective and the trial court denied Petitioner the right to be present at

3

all of his proceedings. (*Id.*, PageID.237.) On October 18, 2021, Petitioner filed a "motion for superintending control" with the Michigan Court of Appeals, requesting that the court of appeals direct the trial court to adjudicate his Rule 6.500 motion. (ECF No. 17-14, PageID.356–360.) In an order entered on April 27, 2022, the court of appeals granted Petitioner's motion and directed the Kent County Circuit Court to enter a written order regarding Petitioner's Rule 6.500 motion within 21 days. (*Id.*, PageID.355.) The trial court issued its order denying Petitioner's Rule 6.500 motion on April 28, 2022. (ECF No. 17-8.) The trial court subsequently denied Petitioner's motion for reconsideration of that order. (ECF Nos. 17-9, 17-10.) On December 12, 2022, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal because Petitioner had failed to "establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 17-15, PageID.426.) The Michigan Supreme Court subsequently denied Petitioner's late *pro per* application for leave to appeal. (ECF No. 17-17, PageID.500.) This § 2254 proceeding followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of

the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I—Challenge to Sentencing and Related Ineffective Assistance of Counsel

In habeas ground I, Petitioner contends that his sentencing guidelines—particularly Offense Variable (OV) 12—were scored incorrectly, and that counsel was ineffective for failing to challenge the scoring of OV 12. (Am. Pet., ECF No. 12, PageID.69.) According to Petitioner, his due process rights were violated because he was sentenced based upon inaccurate information. (*Id.*)

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." (ECF No. 17-12, PageID.273.) That order is entitled to AEDPA deference by this Court. *See Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012) (applying AEDPA deference to a Michigan Court of Appeals order stating only that leave to appeal was denied "for lack of merit in the grounds presented" (citing *Harrington*, 562 U.S. at 99–100)); *see also Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020) (noting that the *Harrington* presumption of a merits adjudication "prevails even when the state court's opinion wholly omits discussion of the federal claim"). For the reasons discussed below, Petitioner fails to demonstrate that the state courts' rejection of this ground for relief is contrary to, or an unreasonable application of, clearly established federal law.

As an initial matter, claims concerning the improper application of, or departures from, sentencing guidelines are state law claims that are typically not cognizable in federal habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the

state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner, however, suggests that the trial court violated Petitioner's due process rights by relying upon inaccurate information when imposing Petitioner's sentence. (Am. Pet., ECF No. 12, PageID.69.)

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Although Petitioner casts his challenge as an "inaccurate information" argument, he does not identify any "false" information upon which the trial court relied when imposing sentence. Instead, Petitioner takes issue with the scoring of Offense Variable 12, which governs the scoring of contemporaneous felonious criminal acts. (Am. Pet., ECF No. 12, PageID.69; Br. Supp. § 2254 Pet., ECF No. 2, PageID.17.) Petitioner's presentence investigation report (PSI) indicates that OV 12 was scored at 25 points. (ECF No. 15, PageID.139.)

A defendant receives 25 points for OV 12 if "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." *See* Mich. Comp. Laws § 777.42(1)(a). To qualify as a contemporaneous felonious criminal act, the act must have occurred

within 24 hours of the sentencing offense and must not have resulted in a separate conviction. *Id.* § 777.42(2)(a).

According to Petitioner, OV 12 should have been scored at zero because "there is no evidence on the record that any offense occurred within 24 hours of the sentencing offense." (Br. Supp. Pet., ECF No. 2, PageID.17.) Petitioner "concedes that there is published case law from circuit court cited by the prosecutor against this argument but respectfully argues that this case is wrongly decided." (*Id.*) Exhibits submitted by Petitioner indicate that the points he received for OV 12 resulted from "each individual count of possession that [Petitioner was] not charged with." (ECF No. 5-3, PageID.54.)

During his plea hearing, Petitioner admitted that he had possessed child sexually abusive material, that he used a computer to download the images, and that he downloaded the images from a website where "people come and upload this material." (ECF No. 17-2, PageID.221–222.) Petitioner acknowledged that he had downloaded the images to his phone and then proceeded to transfer them to a flash drive. (*Id.*) During the hearing regarding Petitioner's motion for resentencing, the trial court noted that child pornography was found on Petitioner's cell phone when he had traded it in to a Metro PCS store for an upgrade. (ECF No. 17-4, PageID.232–233.) Petitioner's new phone "was examined and revealed more of the same, and a search warrant executed revealed more on an SD card." (*Id.*, PageID.233.)

Petitioner's PSI also provides more information regarding the factual basis for Petitioner's pleas. After Petitioner turned in a cell phone for an upgrade at a Metro PCS store in Grand Rapids, an employee "checked the phone to make sure it was cleaned off and located several images on the phone" that met the definition of child sexually abusive material. (ECF No. 15, PageID.132.) The PSI noted that three separate images were located on that phone. (*Id.*) When Petitioner was

interviewed, he turned over his new phone and two thumb drives. (*Id.*) Petitioner's "new phone

was examined and contained several images of child sexually abusive material." (*Id.*) On the cell

phone's SD card, "police found several images of nude, pre-pubescent females." (*Id.*, PageID.133.)

> Michigan state law defines child sexually abusive material as:
>
> [A]ny depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

*See* Mich. Comp. Laws § 750.145c(1)(o). Each image of child sexually abusive material

constitutes a separate violation of the relevant statute. Petitioner does not dispute that the images

in question met this definition; instead, he contests the scoring of OV 12 at 25 points because, as

he contends, he did not download all of the images within 24 hours of the sentencing offense.

Although Petitioner only pleaded guilty to downloading and possessing one image, the facts set

forth above allowed the trial court to conclude that Petitioner constructively possessed all of the

images on the day of the sentencing offense, regardless of when he downloaded the images onto

his phones or other equipment. *See People v. Flick*, 790 N.W.2d 295, 304 (Mich. 2010) (noting

that a defendant constructively possesses child sexually abusive material when he or she

"knowingly has the power and the intention at a given time to exercise dominion or control over

the contraband either directly or through another person or persons'); *People v. Loper*, 830 N.W.2d

836, 843–844 (Mich. Ct. App. Feb. 14, 2013) (concluding that OV 12 had properly been scored at

25 points because the defendant possessed at least 100 images of child pornography on four

computer disks, and the facts allowed the trial court to presume that, although the defendant had

10

downloaded the images well more than a year before the date of the offense, he had possessed all four disks as of the date of the offense), *overruled in part on other grounds by People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015); *see also People v. Ryan*, No. 354031, 2021 WL 3817935, at *10 (Mich. Ct. App. Aug. 26, 2021) (acknowledging *Loper*'s viability regarding scoring of OV 12 after *Lockridge*).

Because Petitioner fails to identify any "false" information upon which the trial court allegedly relied when imposing Petitioner's sentence, his argument regarding the scoring and application of OV 12 is purely a matter of state law. The state courts' determinations that the OVs were properly scored conclusively resolves this issue; it is axiomatically correct because the decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

In his brief supporting his initial § 2254 petition, Petitioner makes another attempt to fit his sentencing claim into the narrow confines of habeas cognizability by referring to the fact that "sentencing courts must continue to score the guidelines using facts found by the judge by a preponderance of the evidence." (Br. Supp. § 2254 Pet., ECF No. 2, PageID.22.) While unclear, it appears that Petitioner is asserting that the judge fashioned Petitioner's sentence, in part, on impermissible judicial fact-finding.

In 2013, the United States Supreme Court held that "any fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Thus, "mandatory minimum sentences may only be increased on the basis of facts found by a jury or admitted by a criminal defendant." *Robinson*

11

*v. Woods*, 901 F.3d 710, 712 (6th Cir. 2008). In 2015, the Michigan Supreme Court concluded that Michigan's sentencing scheme ran afoul of the *Alleyne* decision. *See People v. Lockridge*, 870 N.W.2d 502, 509 (Mich. 2015). Specifically, the supreme court found that "the Sixth Amendment does not permit judicial fact-finding to score [offense variables] to increase the floor of the sentencing guidelines range." *Id.* Thus, the Michigan Supreme Court held that the Michigan sentencing guidelines were no longer mandatory. *Id.* at 519–21.

Here, Petitioner was sentenced on February 15, 2018, well after the Michigan Supreme Court decided *Lockridge*. Thus, "it may be presumed that the sentencing court used an advisory sentencing scheme rather than the mandatory scheme that was applied in *Robinson*." *Torres v. Rewerts*, No. 18-1935, 2018 WL 7317219, at *2 (6th Cir. Dec. 19, 2018). Moreover, after *Lockridge*, "a trial court's imposition of a sentence, no matter how it may be guided by the sentencing guidelines, represents an exercise of the court's discretion." *Fitzgerald v. Trierweiler*, No. 1:17-cv-435, 2017 WL 2790710, at *7 (W.D. Mich. June 28, 2017). In Petitioner's case, therefore, the trial court's sentence (and, by extension, the scoring of OV 12) was an exercise of discretion, and any facts that the trial court "may have found in support of its exercise of discretion do not implicate the Sixth Amendment." *See id.* Any contention by Petitioner that his sentence was based on judge-found facts, therefore, does not raise a federal constitutional claim. *See Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts.").

Finally, Petitioner faults trial counsel for not challenging the scoring of OV 12. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an

objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's decision regarding counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the

13

difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

According to Petitioner, counsel should have objected to the scoring of OV 12 because there was no evidence that the contemporaneous felonious criminal acts were committed within 24 hours of the offenses of conviction. (Am. Pet., ECF No. 12, PageID.69.) Petitioner suggests that had counsel successfully challenged the scoring of OV 12, his OV grid level would have been II instead of III. (Br. Supp. Pet., ECF No. 2, PageID.18.) A review of the sentencing transcript indicates that Petitioner's counsel did not assert a challenge to the scoring of OV 12. Petitioner's appellate counsel raised the issue at the hearing regarding Petitioner's motion for resentencing, but also acknowledged the following:

> And I would just note that the cases that are Michigan Court of Appeals cases that are against my argument and also the case on OV-12 that the People cited to is also a Michigan Court of Appeals opinion. So I recognize those and that that is the state of the law at this time, but I continue to make these arguments in the hopes that there are some changes at the Michigan Supreme Court level to preserve these issues for future appeals.

(ECF No. 17-4, PageID.231.) Thus, Petitioner's appellate counsel realized that Michigan law regarding scoring of OV 12 when it pertains to possession of child sexually abusive material cut against the argument Petitioner now asserts in his § 2254 petition. Any argument otherwise by Petitioner's attorney at sentencing would have been meritless, and "[n]o prejudice flows from the failure to raise a meritless claim." *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008). Petitioner, therefore, has not demonstrated that counsel was ineffective for failing to challenge the scoring of OV 12.

For all the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground I.

### B.      Ground II—Disproportionate Sentence

In habeas ground II, Petitioner contends that his sentence is "disproportionate, unreasonable, and disparate" because he was sentenced at "the very top end of the guideline[s], but had an incredible amount of community support, despite the court trying to say that he had no ties to the community." (*Id.*, PageID.71.) Petitioner avers that he was basically given a life sentence. (*Id.*)

The term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). However, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

15

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

To the extent Petitioner asserts his disproportionality claim as a violation of the Eighth Amendment's proscription against cruel and unusual punishment, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that

16

falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

For the foregoing reasons, Petitioner is not entitled to relief for habeas ground II.

## C.  Ground III—Conflict of Interest

In habeas ground III, Petitioner contends that trial counsel "actively represented a conflicting interest, which adversely affected her performance, and also the outcome of the proceedings." (Am. Pet., ECF No. 12, PageID.72.) He argues that he was prejudiced from the beginning by this conflict and, therefore, "did not receive a fair or unbiased proceeding." (*Id.*)

For purposes of an ineffective assistance of counsel claim, prejudice is presumed if counsel is shown to have been burdened by an actual conflict of interest. *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345–50 (1980)). However, even in the case of such a conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350).

Petitioner suggests that counsel "actively represented conflicting interests" and references an email chain between trial counsel and the prosecuting attorney. (ECF No. 5, PageID.47.) That email chain indicates that on December 26, 2017, trial counsel emailed the prosecuting attorney regarding her calculations of the various OVs and Prior Record Variables (PRVs) at issue in Petitioner's case. (ECF No. 5-2, PageID.53.) Counsel's email appears to be in response to a prior

17

email sent to the prosecuting attorney, as she begins her email by stating: "Thanks Dan! Hope you and Christian did as well. You really went all out on his Christmas gift. Maybe J should take some notes ;) j/k." (*Id.*) She then noted that she "did not score OV 12 because he is being convicted of all felonies charged and acts are already scored in PRV 7." (*Id.*) The prosecuting attorney replied to set forth his views of the PRVs and OVs. (*Id.*, PageID.54.)

Despite Petitioner's suggestion that counsel "actively represented conflicting interests," the email chain does not establish that is so. Rather, Petitioner's claim must be based on "an actual conflict of interest [that] adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692 (quoting *Sullivan*, 446 U.S. at 350). The Sixth Circuit has set forth the showing necessary to establish such a conflict:

> To find an actual conflict, we require petitioner to "point to specific instances in the record to suggest an actual conflict or impairment of [his] interests" and "demonstrate that the attorney made a choice between possible alternative courses of action". . . . Counsel's choices between alternative courses is evidence of adverse effect only if it is not part of a legitimate strategy, "judged under the deferential review of counsel's performance prescribed in *Strickland*."

*McElrath v. Simpson*, 595 F.3d 624, 624–25 (6th Cir. 2010) (citations omitted).

Here, Petitioner suggests that counsel had a conflict of interest because she did not act in Petitioner's best interests regarding the scoring of OV 12. (Br. Supp. Pet., ECF No. 25.) Petitioner states that he has a "due process right to be sentenced using accurate information." (*Id.*) As discussed *supra*, however, Petitioner has not demonstrated that counsel was ineffective for failing to object to the scoring of OV 12. Moreover, to the extent that Petitioner believes counsel had an actual conflict of interest based upon her holiday-related exchange with the prosecuting attorney, Petitioner simply has not shown how that exchange created a conflict that affected counsel's strategic choices. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

**D.      Ground IV—Jurisdictional Issue**

In habeas ground IV, Petitioner avers that the trial court failed to establish subject-matter jurisdiction. (Am. Pet., ECF No. 12, PageID.74.) According to Petitioner, the trial court held a hearing regarding his motion for resentencing on October 26, 2018, and made a statement referring to the court as "Caesar's court." (*Id.*) Petitioner also contends that the trial judge quoted from the Bible, and that these remarks were prejudicial because he has the right to be tried in a "court in the United States under proper subject matter jurisdiction, and not in a Roman court." (*Id.*) In his supporting brief, Petitioner avers that the Kent County Circuit Court "has no criminal jurisdiction, judicial authority to issue fines, criminal judgment commitment orders, and by extension, the taking of one's property." (Br. Supp. Pet., ECF No. 2, PageID.26.) He argues that the court "is operating a fraud, which makes Petitioner's conviction[s] void." (*Id.*)

The determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). Moreover, "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

The Michigan Supreme Court has described the concept of subject matter jurisdiction as follows: "Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v. Lown*, 794 N.W.2d 9, 23 (Mich. 2011) (internal quotation marks and emphasis omitted). "Michigan circuit courts are court of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id.*; *see also* Mich. Const. of 1963, art. 6, §§ 1 & 13; Mich. Comp. Laws §§ 600.151, 600.601, and 767.1. Any purported violation of these state jurisdictional laws does not provide a

basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Thus, there is

no question that the trial court had jurisdiction to hear the charges against Petitioner.

In any event, Petitioner's assertion that the trial court was automatically divested of

subject-matter jurisdiction when it acted in the manner of a "Roman court" is patently frivolous.

During the hearing regarding Petitioner's motion for resentencing, the trial court noted that it had

received letters "in the context of mitigation" from a pastor from the First Christian Reformed

Church in Grand Rapids, Michigan. (ECF No. 17-4, PageID.231–232.) In denying Petitioner's

motion for resentencing, the trial court stated in relevant part:

> Child pornography is serious. And though this is Caesar's court, I can't help but
> recall the words of Christ who speaks of the punishment for those who corrupt the
> morals of youth. Each time those images are viewed, each time they are
> downloaded, they are a separate assault on innocence. And were there no market
> for it, perhaps there would be no reason to abuse again and again and use again and
> again these images which are painful.

(*Id.*, PageID.233.) Essentially, in making that statement, the trial court reminded Petitioner that

even though Petitioner had presented support from the pastor of his church, the court was a court

of the people, not of God, and that it had a duty to follow the law.

For the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground

IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

appealability should be granted. A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a

certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine

whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under

*Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-

El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a

full merits review, but must limit its examination to a threshold inquiry into the underlying merit

of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of

Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate

of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in

violation of the Constitution and has failed to make a substantial showing of the denial of a

constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal

would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an order and judgment denying the § 2254 petition as well as a

certificate of appealability.

Dated:   September 16, 2024                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge